IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**VERONICA G.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

Civ. No. 3:17-cv-02038-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Veronica G. seeks judicial review of the final decision of the Commissioner denying her applications for SSI and SSDIB under the Social Security Act. The parties have consented to magistrate jurisdiction. For the reasons below, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

## BACKGROUND[2]

Plaintiff, who is now 50 years old, has applied for disability-related benefits four times. On February 12, 1998, she filed an application for supplemental security income ("SSI"), but the application was denied. On September 15, 2000, she filed applications for disability insurance benefits (DIB) and SSI, claiming disability since January 1, 1995, but these were also denied. Plaintiff's third set of applications for benefits were filed on March 7, 2007, and these were granted. Tr. 419, 423. Plaintiff was in pay status from 2007 to 2010. Tr. 18. She was then notified that her disability had ceased due to a finding of medical improvement, based in part on an investigation by the Cooperative Disability Investigations Unit (CDIU). The initial determination was made July 21, 2010, and the reconsideration dated April 14, 2011 came to the same conclusion.

On September 21, 2011, Plaintiff filed her fourth and most recent set of applications for a period of disability, DIB and SSI. In both applications, Plaintiff alleges disability beginning October 1, 2010, the date of the cessation of her benefits due to medical improvements. These applications were denied initially and upon reconsideration. Tr. 213, 242. A hearing was held before Administrative Law Judge (ALJ) Kelly Wilson on May 22, 2015 and a supplemental hearing was held on March 22, 2016. Tr. 71, 115.

On September 28, 2016, the ALJ found Plaintiff not disabled because she found Plaintiff could perform the jobs of mail sorter, storage facility rental clerk, and price marker, with a residual functional capacity that limited plaintiff to between the full range of sedentary work and less than the full range of light work. Tr. 35, 60-61. Plaintiff's residual functional capacity ("RFC"), according to the ALJ, is largely the result of degenerative disc disease of the spine and

---

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 14.

idiopathic hypersomnia. Tr. 35-52. The Appeals Council of the Social Security Administration (AC) denied Plaintiff's appeal of the ALJ's decision on October 19, 2017. Tr. 1-3. The record does not include the content of Plaintiff's AC appeal other than noting additional medical records were submitted. *Id.* Plaintiff timely filed a Complaint for Review of Decision of Commissioner of Social Security before this Court pursuant to 42 USC §405(g) on December 22, 2017.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);

>   416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.
>
>       a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. Tr. 21.

2. Plaintiff has not engaged in substantial gainful activity from the alleged onset date of October 1, 2010. Tr. 21.

3. Plaintiff has the following severe impairments: morbid obesity, degenerative disc disease of the lumbar, thoracic, and cervical spine, and idiopathic hypersomnia. Tr. 21.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 35.

5. Plaintiff has the RFC to perform the exertional and non-exertional demands of light work, which is defined in 20 CFR 404.1567(b) and 416.967(b) as work that involves lifting and carrying 20 pounds occasionally and 10 pounds frequently, except that she is able to perform standing and/or walking for up to 2 hours in an 8-hour workday. She is able to perform frequent stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but no climbing of ladders, ropes, scaffolds. She is able to perform simple and detailed tasks, but more complex tasks would be difficult to maintain consistently due to the effects of idiopathic hypersomnia. Tr. 35.

6. Plaintiff is unable to perform any past relevant work. Tr. 59.

7. Plaintiff was born on March 11, 1969 and was 41 years old, which is defined as a younger individual, on the alleged onset date. Tr. 60.

8. Plaintiff has at least a high school education and is able to communicate in English. Tr. 60.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that

she can perform, including mail sorter, storage facility rental clerk, and price marker. Tr. 60 – 61.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from October 1, 2010, through September 28, 2016. Tr. 61.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff's main theory in support of her contention that substantial evidence does not support the ALJ's decision is that the ALJ failed to fully and fairly develop the administrative record or ignored information in the record. To that end, Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the medical opinions of DDS non-examining physicians and Plaintiff's treating physician?
2. Did the ALJ properly assess the combination of severe and non-severe impairments at Step Two and in the RFC?
3. Did the ALJ properly evaluate Plaintiff's ability to stoop or bend at the waist in the RFC?
4. Did the ALJ properly evaluate Plaintiff's mental health limitations in the RFC?

The ALJ fully and fairly developed the record and properly evaluated that record. The decision is supported by substantial evidence and is therefore affirmed.

**I.     The ALJ properly evaluated the medical opinions in the record and translated their findings into work-related limitations.**

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan*, 246 F.3d at 1201. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.*

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); see also *Reddick*, 157 F.3d at 725 ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

When the record contains conflicting evidence, "it is the ALJ's role to determine credibility and resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). And, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### a. Non-examining DDS consultants

Non-examining medical consultants Drs. Jensen, Meyers, and Alley opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand and / or walk for a

total of two hours, among other limitations. Tr. 222-23, 256-58, 4644-51. The ALJ adopted the lifting, carrying, standing, and walking limitations of all three of these doctors. Tr. 53; *see* Tr. 35 (residual functional capacity assessment limiting Plaintiff to "lifting and carrying 20 pounds occasionally and 10 pounds frequently, except that she is able to perform standing and/or walking for up to 2 hours in an 8-hour workday."). Plaintiff contends that these doctors actually assessed even more restrictive exertional limitations and limited Plaintiff to "sedentary work," and that the ALJ rejected this limitation without explanation. As the Commissioner points out, however, "Plaintiff does not identify a lifting, carrying, standing, or walking limitation that the ALJ rejected; rather, she seeks to conflate state agency vocational worksheets and vocational summaries with medical opinion." Def. Brief (#20) at 9. The Court agrees that Plaintiff's argument is without merit, as she bases her argument not on the work-related limitations assessed by the doctors, but upon a vocational translation of those limitations. Tr. 224, 261, 4651. Physicians do not have the expertise of a vocational expert, *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011), and the doctors in this case did not specify exertional limitations that are more restrictive than those assessed by the ALJ in the RFC.

### b. Treating physician, Dr. Toffler

Plaintiff's treating physician, William L. Toffler, M.D., rendered a number of opinions,[3] including that Plaintiff would miss more than four days of work per month due to her

---

[3] The ALJ provided ten specific and legitimate reasons for rejecting Dr. Toffler's opinions that Plaintiff does not challenge. Tr. 53-56. Specifically, the ALJ rejected Dr. Toffler's opinions because: (1) they addressed issues reserved to the Commissioner; (2) they were based on Plaintiff's self-report of symptoms; (3) they were based on transient conditions not symptomatic for twelve months; (4) they were based on conditions that were well controlled or had no functional impact, such as a bee sting allergy; (5) they were based on symptoms Plaintiff did not consistently report to treatment providers; (6) they were internally inconsistent; (7) they included limitations more restrictive than Plaintiff alleged; (8) they were inconsistent with Plaintiff's activities; (9) they were inconsistent with objective findings; and (10) they were not always well explained, as Dr. Toffler responded "N/A" more than once when asked what medical findings supported portions of his opinion. Tr. 53-56.

Page 9 of 19 – OPINION AND ORDER

impairments or treatment.[4] Tr. 3707. This opinion is contradicted by the opinions of Drs. Jensen, Meyers, and Alley. Tr. 222-23, 256-58, 4644-51. Elsewhere in her brief, Plaintiff challenges the ALJ's finding that the reason for Plaintiff's frequent medical appointments was for a "disability focus" rather than medical necessity. Both overlapping issues are addressed here.

The ALJ provided a specific and legitimate reason for rejecting Dr. Toffler's opinion regarding missed work-days for medical appointments. Tr. 56. As discussed below, the ALJ rejected this opinion because Plaintiff's use of medical treatment and allegations of symptoms to health care providers was inconsistent with her need for treatment based on the objective medical findings. Tr. 56. In other words, Plaintiff's excessive and unnecessary medical treatment undermined Dr. Toffler's opinion and created a "disability focus" for her appointments. Therefore, the ALJ properly rejected an absenteeism limitation in the Plaintiff's RFC.

When considering how much weight to give a medical opinion, an ALJ considers not only whether the opinion is consistent with the record, 20 C.F.R. § 404.1527(c)(4), but also "any factors . . . of which [she is] aware, which tend to support or contradict the medical opinion," *Id.* at § 404.1527(c)(6). Here, the ALJ cited a May 18, 2013 examination as an illustration of why Dr. Toffler's opinion about absenteeism was contradicted by the record. Tr. 56 (*citing* Tr. 2772). On that day, Plaintiff sought emergency room treatment "complaining of swelling in her neck and fever." Tr. 2772. The examining doctor, Daniel Hubbard, M.D., noted that not only was there "no clinical evidence . . . that she has either of these problems," but also that "she often presents with multiple complaints that are not substantiated on exam and that she finds multiple avenues to avoid discharge." Tr. 2772. And, as the ALJ noted elsewhere, another health care

---

[4] Plaintiff also argues that the ALJ should have considered the length and extent of Dr. Toffler's relationship with Plaintiff. However, the ALJ explicitly discussed the fact that Dr. Toffler treated Plaintiff since at least 2010, (Tr. 39), repeatedly noted that Dr. Toffler was Plaintiff's treatment provider, (*see, e.g.,* Tr. 40, 42-43, 45), and discussed the sequence of examinations and opinions rendered by Dr. Toffler over a multiyear period (Tr. 53-56).

professional found that Plaintiff's report of symptoms and requests for treatment demonstrated "significant narcotic seeking behavior." Tr. 1599; *see* Tr. 52. This is a specific and legitimate reason for rejecting the physician's opinion that Plaintiff would be absent for frequent medical appointments.

Regarding the evaluation of this issue in the RFC, Plaintiff argues that the ALJ should have calculated how many days each month she visited a health care facility to determine how often her impairments and treatment would have caused her to miss work. The Court can find no authority to support this contention. In *Avello*, the ALJ counted the plaintiff's medical appointments on a chart and concluded the plaintiff would not miss work as often as was opined by a health care provider. *Avello v. Colvin*, 2014 WL 5506746, at *25 (D. Nev. Sept. 16, 2014), *report and recommendation adopted*, 2014 WL 5514198 (D. Nev. Oct. 31, 2014)). The court found that the ALJ's analysis was erroneous, as the inquiry needed to be more nuanced than merely counting medical appointments and should take into account work Plaintiff would miss because of "impairments or treatment." *Id.* Here, the ALJ engaged in the nuanced analysis that the Court in *Avello* found was missing in that case. Instead of merely counting medical appointments, the ALJ considered the characterization of the medical necessity of those appointments by Plaintiff's treatment providers. Tr. 56. And, as discussed by the ALJ, the record shows that Plaintiff sought care from treatment providers by alleging symptoms that did not exist and that she repeatedly tried to avoid discharge even after treatment providers determined that there was no basis for her visit.[5]  Tr. 1599, 2772; *see* Tr. 52, 56.

---

[5] The Court also acknowledges that this pattern of behavior is similar to what was observed in the fraud investigation that was performed after the last time SSA awarded Plaintiff disability benefits. *See* Tr. 4150-51. In 2010, the fraud investigators inquired as to why Plaintiff was living in an adult foster home facility. Tr. 4150. A witness explained that:
> The doctor that last qualified [Plaintiff] for adult foster care is now unable to explain why he did that. Each time the facility re-evaluates

Plaintiff concedes that the ALJ provided examples of unnecessary medical appointments in order to discount the opinion of Dr. Toffler, but she argues that Plaintiff's long and complicated medical history required the ALJ to consider each and every appointment's medical necessity and assess how many days of work Plaintiff would actually need to miss for necessary medical appointments. The Court disagrees. The ALJ engaged in the proper analysis to determine the weight to give Dr. Toffler's opinion, and the ALJ also assessed the record as a whole to determine that Plaintiff's excessive medical treatment is not a legitimate limitation as far as her residual functional capacity is concerned.

## II. The ALJ properly assessed the combination of severe and non-severe impairments at Step Two and in the RFC.

### a. Step Two

In social security cases, the ALJ must determine whether an impairment is a medically determinable impairment. An impairment is medically determinable when it results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence of signs, symptoms, and laboratory findings," not just reported symptoms. 20 C.F.R §§ 404.1521, 416.921. Once an impairment is deemed to be medically determinable, then the ALJ must determine if the impairment is a severe or not severe impairment. An impairment (or combination of impairments) is considered severe when it "significantly limits [a person's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.150(c), 416.920(c). Conversely, an impairment (or combination of impairments) is considered not severe if it "does not significantly limit [a person's] physical or mental abilities to

---

[Plaintiff's] status and notifies the doctor that she has reached the function level for transfer to independent living, [Plaintiff] is able to find another reason / condition to necessitate her staying in the foster care program. Tr. 4150-4151.

do basic work activities." 20 C.F.R §§ 404.1521(a), 416.921(a). Moreover, the severe impairment must have lasted or be expected to last at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. If an impairment is determined to be severe, then the sequential analysis proceeds and the ALJ must continue to consider all the claimant's limitations, regardless of whether they are severe. SSR 96-9p, 1996 WL 374184 (July 2, 1996).

The Ninth Circuit has held that an ALJ's finding at step is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If an ALJ decides step two in a claimant's favor, any alleged error is to which impairments the ALJ found severe or non-severe is, at most, harmless and "cannot be the basis for remand." *Id.* at 1049. Here, Plaintiff claims that the ALJ erroneously failed to find incontinence, neurofibromatosis, fibromyalgia, and somatoform disorder severe impairments at step two of the sequential evaluation. However, the ALJ decided step two in Plaintiff's favor and proceeded all the way to step five of the sequential evaluation. Tr. 21, 60-61. Therefore, Plaintiff identifies no harmful error in the ALJ's step two finding.

### b. Residual Functional Capacity assessment

In the Residual Functional Capacity (RFC) assessment, the ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) *citing* Social Security Ruling ("SSR") 96–8p (1996). Even though a non-severe "impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.* Here, Plaintiff challenges the ALJ's assessment of Plaintiff's claimed incontinence, neurofibromatosis, fibromyalgia, and somatoform disorders. However, the Plaintiff

do basic work activities." 20 C.F.R §§ 404.1521(a), 416.921(a). Moreover, the severe impairment must have lasted or be expected to last at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. If an impairment is determined to be severe, then the sequential analysis proceeds and the ALJ must continue to consider all the claimant's limitations, regardless of whether they are severe. SSR 96-9p, 1996 WL 374184 (July 2, 1996).

The Ninth Circuit has held that an ALJ's finding at step is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If an ALJ decides step two in a claimant's favor, any alleged error is to which impairments the ALJ found severe or non-severe is, at most, harmless and "cannot be the basis for remand." *Id.* at 1049. Here, Plaintiff claims that the ALJ erroneously failed to find incontinence, neurofibromatosis, fibromyalgia, and somatoform disorder severe impairments at step two of the sequential evaluation. However, the ALJ decided step two in Plaintiff's favor and proceeded all the way to step five of the sequential evaluation. Tr. 21, 60-61. Therefore, Plaintiff identifies no harmful error in the ALJ's step two finding.

### b. Residual Functional Capacity assessment

In the Residual Functional Capacity (RFC) assessment, the ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) *citing* Social Security Ruling ("SSR") 96–8p (1996). Even though a non-severe "impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.* Here, Plaintiff challenges the ALJ's assessment of Plaintiff's claimed incontinence, neurofibromatosis, fibromyalgia, and somatoform disorders. However, the Plaintiff

identifies no error in how the ALJ considered these impairments, but merely asks this Court to reweigh the evidence and come to a different conclusion.

### i. Incontinence

The ALJ properly addressed Plaintiff's incontinence by reviewing the medical history of her complaints, the treatment and surgical history, and the potential impact on her work limitations. Tr. 28. Contrary to Plaintiff's claim, the ALJ did not merely suggest that Plaintiff use protective undergarments to entirely solve the issue, but mentioned the fact that Plaintiff herself stated that she wears such undergarments as a factor in his consideration of the impairment as nonsevere. Tr. 29. The ALJ also considered her inconsistent reports of the impairment, her inconsistent reports of the efficacy of her surgery in 2015, and her failure to follow treatment recommendations, such as cutting her liquid intake by half and avoiding coffee, and pelvic floor rehabilitation. Tr. 28-29.

Plaintiff claims that the ALJ "failed to discuss the relationship between incontinence and somatization disorder as pointed out by Plaintiff." However, the only "relationship" between these two impairments in the record is Plaintiff's Prehearing Memorandum, which merely states, "Incontinence is a typical symptom of somatization disorder." Tr. 536. Plaintiff points to no medical evidence or even subjective symptom testimony to connect these two impairments. The ALJ properly assessed Plaintiff's incontinence and found that it did not significantly limit her physical or mental abilities to do basic work activities.

### ii. Fibromyalgia

Plaintiff argues that the ALJ improperly rejected her allegations that fibromyalgia often caused her to stay in bed all day with a heating pad. Tr. 159. An ALJ must evaluate whether a claimant's alleged symptoms are consistent with the evidence in the record. 20 C.F.R. §

404.1529(a). An ALJ properly rejects a claimant's subjective testimony about her symptoms and limitations by providing clear and convincing reasons for doing so. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). An ALJ may consider whether a claimant failed to seek treatment when evaluating alleged limitations. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). Here, the ALJ reasonably rejected Plaintiff's allegation that she had to stay in bed all day with a heating pad because the alleged limitation was inconsistent with her failure to seek treatment for fibromyalgia during much of the period under review. Tr. 29.

Plaintiff cites medical records to refute the ALJ's reasoning (Plf. Brief 13), but the records she cites either don't discuss fibromyalgia (Tr. 1190), precede the period under consideration (Tr. 2163, 2198, 2222-23, 2230), cite fibromyalgia as a condition that Plaintiff reported to a neuropsychologist (Tr. 3123), merely identify the fact that Plaintiff was diagnosed with fibromyalgia in 2008 (Tr. 4652), or show only that Plaintiff took medication (Tr. 1476, 4428). Plaintiff has not shown that the ALJ mischaracterized the record by finding that her use of medical treatment during the time period under review was inconsistent with her allegedly debilitating fibromyalgia symptoms.

### iii. Neurofibromatosis

The ALJ discussed Plaintiff's medical and treatment history regarding neurofibromatosis, including the "history of multiple excisions, which were mostly performed in the office and were therefore not major surgeries and dd not require extended recovery times." Tr. 23. The ALJ also noted treatment notes discussing Plaintiff's condition as stable, and the fact that Plaintiff had previously had neurofibromas removed without complications. *Id.*

### iv. Somatoform Disorder

"When evaluating psychiatric impairments such as somatization disorder . . ., the ALJ must follow a 'special psychiatric review technique . . . .'" to determine if an impairment is severe. *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012). When an ALJ concludes that a claimant has no more than a "mild limitation in any functional area and no episodes of decompensation, a conclusion that a plaintiff's mental impairments are not severe is generally appropriate. 20 C.F.R. § 404.1520a(d)(1) (effective Jun 13, 2011 to January 16, 2017).

Here, the ALJ followed the special psychiatric review technique, (Tr. 33-35), and appropriately concluded that none of Plaintiff's mental impairments were severe because Plaintiff had no more than a "mild" limitation in any functional area and no episodes of decompensation. Tr. 34. Additionally, the ALJ found no evidence of a somatoform disorder in the record, other than a diagnosis by DDS consultants. Tr. 57. Plaintiff points to a comment by Paul Stoltzfus, Psy.D., which stated: "Index for Somatoform Disorder was significantly elevated and indicates a strong tendency to develop physical symptoms in response to psychological stress." Tr. 3123. In the "DSM-V Diagnosis" section of his report, Dr. Stoltzfus listed "Somatization Disorder Traits." *Id.* The Court finds this brief comment to be vague and insufficient to outweigh the ALJ's analysis of the rest of the medical record and assessment of Plaintiff's mental impairments. Plaintiff does not challenge any of the findings of the special psychiatric review technique. Based on these findings and the evidence in the record, the ALJ properly considered this impairment and found that it did not significantly limit her ability to do work activities.

### c. Cumulative Limitations

Finally, Plaintiff argues that "the ALJ must describe the cumulative limitations of the severe and non-severe limitations, not individual assessments of each impairment." Plf. Brief

11. However, Plaintiff herself does not state what the cumulative effects of these limitations are, or how they are different or more limiting than what the ALJ determined. The ALJ properly considered all of the limitations imposed by Plaintiff's impairments, and, ultimately the ALJ's determinations are adequately supported by substantial evidence in the record.

### III. The ALJ properly evaluated Plaintiff's ability to stoop or bend at the waist.

An ALJ must provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p, available at 1996 WL 374184, at 7. Here, the ALJ provided a 23-page narrative describing how the evidence supported each conclusion contained within the residual functional capacity. Tr. 36-59.

For vocational purposes, "occasionally" means one-third of the work day, while "frequently" means two-thirds of the work day. Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Dept. of Labor, 1993, Appendix C (Physical Demands). In the residual functional capacity, the ALJ stated that Plaintiff could engage in frequent stooping, that is, that Plaintiff could stoop for up to two-thirds of the workday. Tr. 35. In her explanation of the RFC, the ALJ stated that Plaintiff had an "occasional limitation" in this activity – that is, that a limitation lasting one-third of the day would prevent her from engaging in the activity. Tr. 57. Thus, in the residual functional capacity, the ALJ quantified the amount of the day Plaintiff could engage in the activity (two-thirds of a workday), while in the narrative, the ALJ quantified the amount of the day Plaintiff could not engage in the activity (one-third of the workday). There is no inconsistency in the ALJ's quantifications of Plaintiff's limitation in stooping.

### IV. The ALJ properly assessed Plaintiff's mental limitations in the RFC.

Plaintiff argues that the ALJ erred by failing "include [mental health] limitations such as the ability to do math." Plf. Brief 15. In particular, Plaintiff claims that the ALJ failed to accept Dr. Stoltzfus's opinion that Plaintiff would have difficulty performing math.

When a medical report does not assign any specific work-related limitations, an ALJ need not provide reasons for rejecting the report because none of its conclusions were actually rejected. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, Dr. Stoltzufs rendered no opinion as to what work-related math limitations Plaintiff might have. Tr. 3124. Instead, Dr. Stoltzfus found, without comment, that while Plaintiff's reading and writing skills were at the upper high school and college level, her math skills were at the fifth-grade level and met the criteria for a learning disorder. Tr. 3123-24. The ALJ discussed these findings and noted that "[d]espite diagnosing a learning disorder, Dr. Stotlzfus concluded that the claimant functioned in the average range intellectually," and had "no significant problems with neurocognitive functioning." Tr. 32, 3123-24. The ALJ did not reject this opinion, but concluded that the learning disorder diagnosed by Dr. Stotlzfus would not have a significant effect on Plaintiff's functioning and found it non-severe. Tr. 32. Plaintiff has not demonstrated any error with this reasoning, and it is supported by substantial evidence in the record.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED, pursuant to "sentence four" of 42 U.S.C. § 405(g): "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

It is so ORDERED and DATED this _10_ day of January, 2020.

_____
MARK D. CLARKE
United States Magistrate Judge